## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL HOLLIDAY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 19-CV-4564** |
| | : | |
| **PRIME CARE MEDICAL,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**Rufe, J.**                                                                                      **March 31, 2023**

Michael Holliday, proceeding *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights based on the conditions of his confinement during his pretrial detention at the Berks County Jail ("BCJ") from approximately June 2019 through November 2019. After certain claims and Defendants were dismissed, the case proceeded to discovery. Of the five remaining Defendants, two are correctional officers at BCJ, Sgt. Stacy Acker and Lt. Franco Tassone (the "BCJ Defendants"). The other three Defendants are employees of PrimeCare Medical, the medical providers at BCJ: Kenneth Wloczewski, D.O., and physician's assistants Jesse Kirsh, and Gabriel Pelaez (the "PrimeCare Defendants"). All Defendants have moved for summary judgment on Plaintiff's claims. Upon consideration of the motions, Plaintiff's response, and the summary judgment record,[1] the Court will grant the motions for the reasons explained below.

### I.        LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment on a claim or part of a claim is warranted where there is "no genuine dispute as to any material fact and the movant is

---

[1] Defendants submitted excerpts from Plaintiff's deposition. The Court ordered Defendants to file the complete transcript to provide the full context of Plaintiff's testimony. Order Mar. 21, 2023 [Doc. No. 73].

entitled to judgment as a matter of law."[2] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[3]

The court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor."[4] It is improper for a court "to weigh the evidence or make credibility determinations" as "these tasks are left to the fact-finder."[5] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[6] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[7] If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[8]

## II.    DISCUSSION

### A.  Exhaustion and Claims under § 1983

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners exhaust all prison grievance procedures before suing in court.[9] The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge."[10] The Third Circuit has explained that exhaustion requires "substantial compliance with the prison's grievance

---

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

[4] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[5] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citations omitted).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[8] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[9] 42 U.S.C. §1997e(a).

[10] *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010).

procedures."[11] "If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment. If there is a genuine dispute of material fact related to exhaustion, then summary judgment is inappropriate[.]"[12]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[13] Importantly, because there is no vicarious liability under § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs."[14] To state a constitutional claim based on the failure to provide proper medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[15] "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[16] Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[17] Claims that constitute medical malpractice or mere

---

[11] *Small v. Camden Cnty.*, 728 F.3d 265, 272 (3d Cir. 2013) (internal quotation and citations omitted).

[12] *West v. Emig*, 787 Fed.App'x 812, 814 (3d Cir. 2019).

[13] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[14] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

[15] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). As Plaintiff was a pretrial detainee, his claims are governed by the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

[16] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted).

[17] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citation omitted).

disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.[18]

### B. Claims against the BCJ Defendants

Plaintiff asserts claims against Sgt. Acker based on the cell conditions during a 15-day period that Holliday was in disciplinary housing, and against Lt. Tassone, asserting a deliberate indifference to a serious medical need in failing to provide Holliday with a gluten-free diet.[19]

#### 1. Claim regarding cell conditions

Holliday alleged in the Amended Complaint that he was placed in disciplinary housing for 15 days in June 2019, where he was subjected to what inmates call "make it rain" – a process that involves "inmates on [the] top tier" of BCJ urinating down on a pole that is loose in the corner of a cell, causing the urine to seep down to the lower ceiling.[20] Upon complaining to prison officials, Holliday alleges that Defendant Acker, the Head of the Disciplinary Housing Unit and Hearing Examiner, told Holliday "[t]hat's all just part of the experience[.]"[21] Defendant Acker argues that Holliday failed to exhaust this claim. The BCJ Inmate Handbook requires an inmate to submit a written grievance within 30 days of the event giving rise to the grievance.[22] Holliday did not file a grievance as to this claim until September 21, 2019.[23]

---

[18] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[19] Although Plaintiff does not address these claims in his response to the BCJ Defendants' Motion for Summary Judgment, the Court rules on the merits. *See* Pl.'s Opp. Mot. Summ. J. [Doc. No. 72].

[20] Am. Compl. [Doc. No. 16] at ECF page 10.

[21] Am. Compl. [Doc. No. 16] at ECF page 10. Defendant Acker denies making any such statement. BCJ Defs.' Mot. Summ. J. Ex. C [Doc. No. 67-6] ¶ 6.

[22] BCJ Defs.' Mot. Summ. J. Ex. B [Doc. No. 67-5] at 50-53.

[23] BCJ Defs.' Mot. Summ. J. Ex. D [Doc. No. 67-7]. The grievance did not mention Defendant Acker.

Plaintiff testified in his deposition that he had filed "plenty" of grievances, and knew he could file grievances.[24] Holliday testified that he was denied the grievance form and denied a pencil while he was in the disciplinary unit, but filed one "soon after" his release although he could not remember exactly when.[25] Because there is no "conflict between the Prison's records and [the prisoner's] deposition testimony" and Holliday has not "set[] forth specific facts" showing that he filed the grievance within 30 days of his release from the disciplinary unit, the Court will grant the summary judgment to Defendant Acker on this claim.[26]

### 2. Claim regarding gluten-free diet

Holliday alleged in the Amended Complaint that Defendant Pelaez "prescribed a medically necessary gluten free diet" for Holliday during his incarceration.[27] Holliday alleges that he was frequently served meals with gluten, and that Defendant Tassone, who worked in the kitchen, was aware of this. Holliday testified in his deposition that Pelaez prescribed the gluten-free diet in September 2019, and that he had not ever had such a diet before.[28] After his release, Holliday was tested and he does not have celiac disease, but he has an acid reflux condition and tries to avoid gluten, although he eats it sometimes.[29] On September 21, 2019, Holliday submitted a grievance that did not state he was given gluten, but that he was given a "foodloaf" made of rice and potatoes that was served cold.[30] Defendant Tassone responded that the food

---

[24] Holliday Dep. [Doc. No. 74] at 26.

[25] Holliday Dep. [Doc. No. 74] at 28-29.

[26] *Paladino v. Newsome*, 885 F.3d 203, 208, 210 (3d Cir. 2018) (citation omitted). Because Holliday failed to exhaust the claim, the Court does not reach the question as to whether conditions in the cell were so unsanitary as to violate the prohibition against cruel and unusual punishment. *See Taylor v. Riojas*, 141 S. Ct. 52 (2020).

[27] Am. Compl. [Doc. No. 16] at ECF page 20.

[28] Holliday Dep. [Doc. No. 74] at 51.

[29] Holliday Dep. [Doc. No. 74] at 48-50.

[30] BCJ Defs.' Mot. Summ J. Ex. G [Doc. No. 67-10].

item was a "rice cake/gluten free bread" served along with the meal, and that the kitchen would make sure to warm it.[31] Holliday appealed this grievance, but again did not state that he was being served gluten.[32] The warden responded that he was reminding the staff not to serve the gluten-free bread frozen or chilled.[33] On October 20, 2019, Holliday sought to appeal again the earlier grievance, and asserted for the first time that he was served pasta with beans that contained gluten.[34] On October 24, 2019, Holliday filed a new grievance, asserting he had been served food with gluten six times.[35] Defendant Tassone responded on October 28, 2019, stating that it appeared Holliday accidently received the wrong meal, and that when it happened he should immediately inform the unit officer to have the correct meal sent.[36] Holliday did not appeal this grievance. Holliday then submitted a grievance on November 18, 2019, stating he "would like off this diet," and was told to request that action through a "sick slip" to the medical providers.[37] Upon Holliday's request, Defendant Kirsh directed that Holliday resume a regular diet.[38]

Holliday did not exhaust his administrative remedies on this claim, as there is no evidence that he appealed the response to the grievances that Holliday had received meals with gluten. Moreover, the record does not show that Defendant Tassone acted with deliberate indifference to a serious need for a medically prescribed diet and intentionally refused to provide

---

[31] BCJ Defs.' Mot. Summ J. Ex. G [Doc. No. 67-10].

[32] BCJ Defs.' Mot. Summ J. Ex. H [Doc. No. 67-11].

[33] BCJ Defs.' Mot. Summ J. Ex. H [Doc. No. 67-11].

[34] BCJ Defs.' Mot. Summ J. Ex. I [Doc. No. 67-12].

[35] BCJ Defs.' Mot. Summ J. Ex. J [Doc. No. 67-13].

[36] BCJ Defs.' Mot. Summ J. Ex. J [Doc. No. 67-13].

[37] BCJ Defs.' Mot. Summ J. Ex. L [Doc. No. 67-15].

[38] BCJ Defs.' Mot. Summ J. Ex. M [Doc. No. 67-16].

him with this diet, delayed access to the diet for a non-medical reason or otherwise prevented him from receiving the diet.[39] Summary judgment will be granted as to this claim.

### C.  Claims against the PrimeCare Defendants

1.  <u>Claim regarding catheters</u>

In the Amended Complaint, Holliday alleged that before he was incarcerated, his physician had diagnosed him with a bladder condition and prescribed the use of catheters for occasions when Holliday is unable to urinate as necessary.[40] The Amended Complaint further alleged that he was "never supplied any catheters" during his incarceration at BCJ and that his requests for medical care on this issue and his grievances were ignored.[41] However, in his deposition Holliday testified that the medical staff would bring catheters to him, or he would be taken to the "medical people" and given catheters there.[42] Holliday testified that after grievances, unidentified individuals "eventually just gave me the catheters."[43] Reading the deposition testimony as a whole, Holliday had access to catheters either in his cell or in the medical department soon after his arrival at BCJ, and neither his deposition testimony nor the Amended Complaint identified any individual responsible for denying him access, as is necessary for individual liability. Summary judgment will be granted as to this claim.

---

[39] *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[40] Am. Compl. [Doc. No. 16] at ECF page 10.

[41] Am. Compl. [Doc. No. 16] at ECF page 10.

[42] Holliday Dep. [Doc. No. 74] at 86.

[43] Holliday Dep. [Doc. No. 74] at 89.

2.   Claim regarding medication for tachycardia

In the Amended Complaint, Holliday alleged that before his incarceration he was diagnosed with, and treated for, tachycardia with the medication metoprolol.[44] Plaintiff alleged that he informed the prison intake screener that he was prescribed metoprolol but did not receive the medication throughout his incarceration.[45] The medical records show that upon intake, Plaintiff identified that he was taking methadone, Lopressor (the brand name of metoprolol), and Prilosec (a heartburn relief medication).[46] The medical records show that the information from the pharmacy identified by Holliday did not reflect a prescription for Lopressor.[47] The medical staff determined that because Holliday's blood pressure and pulse all had normal results, the medication was not needed.[48] Holliday testified in his deposition that he was told by Jesse Kirsh that Lopressor was not prescribed because Holliday's blood pressure was low, and that Kirsh was afraid that if he gave him the medication it could cause complications and harm Holliday.[49] Holliday did not testify in his deposition as to any problems he suffered from not having the medication while incarcerated, and acknowledged that he was told his EKG was normal.[50] Based upon the undisputed medical records, Holliday cannot show the medical staff acted with

---

[44] Am. Compl. [Doc. No. 16] at ECF page 10. "Tachycardia is a faster than normal heart rate. A healthy adult heart normally beats 60 to 100 times a minute when a person is at rest. If [a person has] tachycardia . . ., the rate in the upper chambers or lower chambers of the heart, or both, are increased significantly." *Raisley v. Astrue*, No. 12-606, 2013 WL 440971, at *7 n.37 (W.D. Pa. Feb. 5, 2013) (citing Mayo Clinic, Tachycardia, *available at* http://www.mayoclinic.com/health/tachycardia/DS00929.).

[45] Am. Compl. [Doc. No. 16] at ECF page 10.

[46] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM00668 [Doc. No. 69-2] at ECF page 4.

[47] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM00805 [Doc. No. 69-2] at ECF page 11.

[48] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM01830 [Doc. No. 69-2] at ECF page 15.

[49] Holliday Dep. [Doc. No. 74] at 97-98.

[50] Holliday Dep. [Doc. No. 74] at 98-99.

deliberate indifference to a serious medical need, as they monitored his condition and based treatment on a medical basis.

3.   Claim regarding incorrect methadone dosage

It is undisputed that Holliday received an erroneous dosage of methadone on September 23, 2019.[51] Medical staff called Plaintiff's methadone clinic for guidance, and kept Holliday in the medical department overnight for observation.[52] The medical records show that Holliday's vital signs were within normal limits at that time. On October 1, 2019, Holliday reported that he believed he had suffered a stroke, but an examination showed that Holliday was alert and oriented, that he could move his extremities symmetrically and with a full range of motion, and that his gait was normal.[53] In his deposition, Holliday testified that he had a seizure but that the medical personnel "really didn't do anything" and that Defendant Kirsh "kind of ridiculed" the situation.[54] Holliday could not remember what examinations were performed in the aftermath of the incident.[55]

On November 6, 2019, Holliday reported that he thought he had again received the wrong dose of methadone.[56] The medical department staff monitored his vital signs over the next 24 hours.[57] Holliday testified that he still has problems with his speech and trying to communicate, and that he did not have these problems before September 23, 2019.[58] Holliday also testified that

---

[51] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM001943 [Doc. No. 69-2] at ECF page 39.

[52] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM00853 [Doc. No. 69-2] at ECF page 13.

[53] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM001942-43 [Doc. No. 69-2] at ECF pages 38-39.

[54] Holliday Dep. [Doc. No. 74] at 102-04, 107.

[55] Holliday Dep. [Doc. No. 74] at 112.

[56] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM00852 [Doc. No. 69-2] at ECF page 12. Defendants do not concede that there was an incorrect dosage given in the second incident.

[57] PC Prime Care Defs.' Statement Undisputed Facts Ex. A PCM00852 [Doc. No. 69-2] at ECF page 12.

[58] Holliday Dep. [Doc. No. 74] at 111.

a doctor told him that his symptoms could be the result of a methadone overdose, and also that he had a recent MRI with normal results.[59]

Administering an overdose of methadone is a serious mistake, and possibly constitutes medical negligence. However, under § 1983, negligence is not sufficient to establish deliberate indifference. Although Holliday contends that Defendant Kirsh minimized Holliday's condition, the medical records show that Holliday was monitored for at least 24 hours after the incidents, and Holliday does not recall certain aspects of the monitoring that are recorded in the medical records, but acknowledged it was possible that the medical staff listened to his lungs and to his abdomen.[60] There is no evidence of what other actions medical staff should have or could have taken. Based upon the evidence of record, a reasonable jury could not conclude that the PrimeCare Defendants knew of and disregarded "an excessive risk to inmate health or safety."[61]

### 4.  Non-medical claims

Holliday alleges that Defendant Pelaez purposely stepped on Holliday's foot, which had been injured previously in a stabbing.[62] Holliday testified in his deposition that "I don't know if [Pelaez] was mad or what, but he stepped on my foot and then basically told me, look, I'll give you the lower bunk if you just let this be the end of it, sort of thing."[63] Holliday was given the lower bunk, which he needed because of his injured foot. Holliday testified that he filed a grievance, but could not recall when, and did not provide any additional testimony or evidence

---

[59] Holliday Dep. [Doc. No. 74] at 111, 114-15.

[60] Holliday Dep. [Doc. No. 74] at 112-14.

[61] *Farmer*, 511 U.S. at 837.

[62] Holliday also raised a deliberate-indifference claim as to the treatment of his foot and ankle, but the medical records show that medical personnel did evaluate his foot and ankle at least twice. Prime Care Defs.' Statement Undisputed Facts Ex. A PCM01431, PCM01944, PCM02743 [Doc. No. 69-2] at ECF pages 14, 40, 44. Summary judgment will be granted as to this claim.

[63] Holliday Dep. [Doc. No. 74] at 125.

about the grievance.[64] If Defendant Pelaez purposely stepped on Plaintiff's injured foot that could constitute a constitutional violation. However, there is no evidence in the record that Holliday exhausted this claim, other than his vague statement that he did, and summary judgment will be granted on this claim.

Holliday also raised a retaliation claim against Defendant Wloczewski, and testified that Defendant Wloczewski told him to the effect that "if I don't stop bothering the medical department, he can make my life miserable."[65] To establish a claim of retaliation in violation of the First Amendment, Holliday must establish (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.[66] The filing of a grievance constitutes constitutionally protected conduct.[67] The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.[68] However, Holliday does not allege that Defendant Wloczewski took any action against him. Holliday testified that he did not recall if he stopped putting in grievances, but that the incident "gave [him] pause."[69]

Although Holliday could not say when this event occurred, he continued to submit sick call clips and grievances. Holliday submitted at least 29 sick call requests and grievances

---

[64] Holliday Dep. [Doc. No. 74] at 127.

[65] Holliday Dep. [Doc. No. 74] at 129.

[66] *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[67] *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

[68] *See id*.

[69] Holliday Dep. [Doc. No. 74] at 130.

between August 22, 2019 and the end of 2019.[70] As there is no evidence of exhaustion or that Holliday suffered an adverse action, summary judgment will be granted on this claim.

## IV.    CONCLUSION

For the reasons explained above, Plaintiff failed to exhaust his administrative remedies as to some of the claims, and as to the other claims, although there may be a basis to conclude that he received inadequate medical care, as a matter of law he cannot establish that his constitutional rights were violated as is necessary to establish a claim under 42 U.S.C. § 1983. Defendants' motions will be granted. An appropriate Order will be entered.

---

[70] Prime Care Defs.' Statement Undisputed Facts Ex. A PCM01843-63, PCM02967-74 [Doc. No. 69-2] ECF pages 16-36, 49-56.